UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEANN MAE REINKE,

    Plaintiff,

v.                                                        Case No. 10-C-1056

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

**DECISION AND ORDER**

This is an action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 402(e), 1381. Plaintiff Deann Mae Reinke filed applications for DIB and SSI effective December 6, 2007, alleging disability beginning June 14, 1995, due to back injury. (Tr. 83-89, 90-94, 106.) Plaintiff had previously been awarded disability benefits, but her disability was found to have ceased in a final decision of an Administrative Law Judge ("ALJ") issued on November 29, 2007. (Tr. 13, 41, 101.) Thus, for purposes of the applications filed on December 6, 2007, the earliest onset date was November 30, 2007, the day after the ALJ's decision.

The Agency denied her applications initially and on reconsideration, and Plaintiff requested a hearing. On January 12, 2010, ALJ Mary L. Everstine held a hearing during which Plaintiff (who was represented by counsel), her father and a vocational expert ("VE") testified. (Tr. 11-33.) In a February 1, 2010, decision, the ALJ applied the Agency's five-step sequential evaluation, and found

that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work. In light of her RFC and based on her vocational profile, the ALJ found that there were a significant number of jobs Plaintiff could perform. The ALJ therefore found Plaintiff was not disabled and thus not entitled to DIB or SSI. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review.

On review Plaintiff contends that the ALJ erred in several respects and the Commissioner's decision should be reversed and remanded for further proceedings. For the reasons that follow, the Commissioner's decision will be affirmed.

**I. Background**

Reinke was thirty-seven years old at the time of the hearing. (Tr. 49,83.) She was 64 inches tall and weighed 227 pounds. (Tr. 152; 171.) She has a high school education and no past relevant work. She lives with her husband and two children, ages two and fifteen. (Tr. 16, 47.) As noted above, she was receiving disability until the decision of the ALJ on November 29, 2007, finding that she was no longer disabled.

There is no doubt that if Reinke's testimony is to be believed, then she is disabled. At the January, 2010 hearing, Reinke testified she could not work because of constant pain and numbness, particularly prevalent if she sits or stands for too long. (Tr. 16.) She testified that she could only sit or stand for about fifteen minutes at a time. The heaviest item she could lift was "a gallon of milk and that even hurts." (Tr. 21.) Reinke testified she had such disabling pain since 1995, but it had gotten worse. Reinke stated she had constant pain in her back that radiates down her legs, mostly on the right. Her pain was generally a five or six on a ten-point scale, but it was a ten on the

2

date of the hearing due to the twenty-minute drive from Appleton to Green Bay. (Tr. 17-18.) She spends most of her day shifting between the couch and a recliner. (Tr. 20.)

Reinke also claimed to be suffering from depression and migraine headaches. While she did not testify to any functional limitations caused by her depression, she claimed that she had migraine headaches several times per month and they were sufficiently severe that she would be bedridden for one to three days. (Tr. 19.) She took Excedrin Migraine for her headaches, but it was not always effective.

Reinke testified that she drove her daughter to school but only three days a week at most. She also did some dishes and laundry, but relied on her husband, who worked, and her father, who was retired, to help her with these and other tasks. Her father confirmed that he would drive her daughter to school when she was s unable to, and that he also helped her with grocery shopping, the care of her two-year old son, and outside work when her husband was unavailable.

If these limitations are genuine, Reinke would be unable to perform substantial gainful employment. But more than an applicant's testimony is required to support an award of DIB or SSI. The testimony must be supported by medical evidence.

The ALJ characterized the medical evidence as "scant" (Tr. 44), with most of it relating to the period prior to the previous period of disability. The medical records of Dr. Corey Zeller, M.D., from August 2005, indicate that Reinke had presented an exacerbation of back pain over the last four months. (Tr. 159.) Reinke reported a history of chronic pain syndrome and a herniated disk at L5 with spondylolysis and spondylolisthesis. (Tr. 159.) Reinke reported a limited range of motion and difficultly sleeping due to the pain. (Tr. 159.) The report indicates slight paravertebral

3

tenderness on the right side around L4/L5. (Tr. 159.) Dr. Zeller prescribed a steroid burst for five days and Vicodin 5/500 every four to six hours as needed. (Tr. 159.)

Reinke returned on August 15, 2005 and reported significant improvement in pain. (Tr. 158.) According to Dr. Zeller's records, Reinke was comfortable in a seated position, had a normal gait, and had normal neurological findings, including full muscle strength. (Tr. 158.) Dr. Zeller encouraged weight loss and physical therapy; Reinke declined. (Tr. 158.) Dr. Zeller prescribed 75 mg of Diclofenac twice a day to facilitate exercise in the form of walking five times a week. (Tr. 158.) Reinke returned to Dr. Zeller on August 29, 2005, regarding another matter, and he noted the acute pain had resolved completely and the chronic pain was well controlled with acetaminophen. (Tr. 158.)

On January 13, 2006, Reinke saw Dr. Zeller, complaining of upper left and left neck extremity pain. (Tr. 156.) She also complained of coldness and that her right big toe would sometimes randomly turn blue. (Tr. 156.) A neurological examination and range of motion of the upper extremities and neck was normal. (Tr. 156.) Dr. Zeller assessed cervical radiculopathy, and prescribed physical therapy as well as two naproxen tablets per day. (Tr. 156.) Dr. Zeller assured Reinke the toe discoloration was benign. (Tr. 156.)

Reinke returned to Dr. Zeller for a follow-up on February 17, 2006, and reported overall remarkable improvement with only a few symptoms. (Tr. 155.) Due to her quick improvement, Reinke said she had elected to delay her physical therapy. (Tr. 155.) Reinke's neurological examination was unremarkable. (Tr. 155.) Dr. Zeller indicated the cervical radiculopathy was working and Reinke should continue on the naproxen. (Tr. 155.) At this appointment, Reinke also brought a 1997 form regarding her disability and restrictions and requested a new one, since she felt

4

the restrictions on the form were now inappropriate. (Tr. 155.) Dr. Zeller noted the most recent assessment was not performed in his office and told Reinke she should contact an attorney and determine the proper protocol for pursuing a reconciliation of the change made at the unknown location. (Tr. 155.)

Reinke returned to Dr. Zeller's office to complete her disability papers on October 18, 2006. Dr. Zeller noted Reinke's back was injured in 1996 while she was working at Wal-Mart; Reinke had lifted a large bag of merchandise and felt abnormal sensations in her lower back. (Tr. 154.) Reinke saw a chiropractor and had three sessions of physical therapy but quit because she said it hurt her more. (Tr. 154.) She saw a neurosurgeon, Dr. Paul, and had epidural treatments, which she also said worsened her condition. (Tr. 154.)

On February 27, 2007, Reinke saw Dr. Iris Torres for an annual physical. (Tr. 152–53.) Reinke complained of her back problem, saying it prevented her from doing her laundry and grocery shopping all at once. (Tr. 152.) Reinke was taking a tablet of Vicodin at bedtime and Aleve, Tylenol, and Excedrin Migraine as needed. (Tr. 152.) Reinke also had a bruise on her right clavicle area, which she stated was from when she took her daughter sledding. (Tr. 153.) Reinke asked Dr. Torres if she could have another child with her back condition; Dr. Torres explained she could get pregnant but pregnancy could aggravate the back pain. (Tr. 153.)

The next day, Dr. Torres completed a functional capacity assessment for Reinke, indicating she had the ability to lift up to ten pounds occasionally and less than five pounds frequently, that she could sit less than two hours in an eight-hour day, that she could stand and walk less than two hours in an eight-hour day, and required a sit/stand at will option. (Tr. 189–90.) Reinke could sit for fifteen minutes before changing position, stand for fifteen minutes before changing position, and

5

needed to walk around every fifteen minutes for fifteen minutes at a time. (Tr. 189.) Reinke also needed to lie down at unpredictable intervals six or more times per day. (Tr. 190.) Reinke had lumbar radiculopathy at L5, right spondylolysis at L5, and mild grade one spondylolisthesis. (Tr. 190.) Reinke could engage in occasional twisting, stooping, bending, crouching, and climbing, and would be absent from work more than three times a month. (Tr. 190–91.)

On February 12, 2008, a state agency reviewing physician, Dr. Mina Khorshidi, M.D., assessed Reinke's functional capacity and opined she could lift or carry up to ten pounds frequently, and sit, stand, or walk up to six hours each in an eight-hour workday. (Tr. 161.) Dr. Khorshidi indicated Reinke's primary diagnosis was back pain and did not impose any other limitations. (Tr. 160–67.) In May 2008, state agency physician Laura M. Roach indicated that review of the medical record reasonably supported the February 2008 RFC. (Tr. 175–77.)

On September 30, 2009, Reinke saw Dr. Marcin Jaremko, M.D., regarding "disability issues" and indicated she needed disability forms. (Tr. 187–88.) Reinke said she only climbed the stairs at home twice a day; she also said her husband and daughter helped her with cleaning, laundry, shopping, and child care for the two year old. (Tr. 188.) The examination findings (including neurological) were normal other than obesity. (Tr. 188.) Dr. Jaremko also completed a functional capacity assessment, in which he opined Reinke could lift and carry less than ten pounds, stand and walk less than two hours per eight hour day, and sit less than two hours per eight hour day. (Tr. 184.) He opined Reinke could sit or stand for fifteen minutes before needing to change positions; she needed to walk around every fifteen minutes for fifteen minutes at a time. (Tr. 184.) He indicated Reinke needed a sit/stand at will option, and that she needed to lie down at unpredictable intervals during a work shift three or four times a day. (Tr. 185.) Dr. Jaremko said

6

these restrictions were supported by "patient self report and MRI findings." (Tr. 185.) He further said Reinke could occasionally twist, stoop, and climb stairs, but could not crouch or climb ladders. (Tr. 185.) He noted Reinke needed to avoid concentrated exposure to extreme cold, wetness, and hazards so as not to aggravate her symptoms. (Tr. 185.)

On November 11, 2009, Reinke saw a physician's assistant, Kathleen A. Engles. (Tr. 182.) Ms. Engles apparently issued a prescription for Zoloft and Tradozone and told Reinke to return in two weeks for a follow-up on the depression. (Tr. 182.) There is no documentation of complaints, findings, or a diagnosis in the treatment note. (Tr. 182–83.)

The ALJ found that Plaintiff suffered from several severe impairments, including obesity, lumbar pain, and migraine headaches, none of which met or medically equaled one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. The ALJ also found that Plaintiff's testimony concerning the extent of her pain was not credible and that, contrary to her testimony, Plaintiff had the RFC to perform a wide range of light work, but was limited to lifting no more than 10 pounds and could not sit, stand or walk longer than 6 hours in an 8-hour workday. Assuming a person of Plaintiff's age and RFC, the VE was able to identify numerous jobs that Plaintiff could perform, including telephone order clerk, charge account clerk, and surveillance system monitor. Based on these findings, the ALJ concluded Plaintiff was not disabled.

Reinke challenges the ALJ's decision on several grounds. She claims (1) the ALJ did not comply with the requirements for determining credibility; (2) the RFC assessment did not have a sufficiently articulated analysis; and (3) the ALJ erred in leaving out limitations in the hypothetical question posed to the VE. Each of these grounds will be discussed in turn below.

7

## II. Analysis

An ALJ's conclusion of no disability is reviewed with deference and will be upheld if it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue,* 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). The court reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). An ALJ need not specifically address every piece of evidence, but must provide a "logical bridge" between the evidence and her conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). An ALJ must also "confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). An ALJ's credibility determination is entitled to special deference because the ALJ has the opportunity to observe the claimant testifying. *Castile v. Astrue*, 617 F.3d 923, 928–29 (7th Cir. 2010). Accordingly, credibility determinations are reversed only if they are patently wrong. *Id.* The ALJ is also expected to follow the Agency's own rulings and regulations in making his determination. Failure to do so, unless the error is harmless, also requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006).

**Claim 1: The ALJ Did Not Comply With the Requirements for Determining Credibility**

First, Reinke alleges that the ALJ did not comply with the requirements for determining credibility in several respects. Social Security Ruling 96-7p provides that ALJs must supply

8

"specific reasons" for a credibility finding. SSR 96-7p. A credibility finding should not be overturned unless it is "patently wrong" and a credibility determination should be disturbed only if the finding is unreasonable or unsupported. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). In assessing credibility, the ALJ considers both the objective and other evidence of the record. 20 C.F.R. § 404.1529(c).

The ALJ found Plaintiff's hearing testimony not credible to the extent she alleged an inability to perform any work. The ALJ adequately explained her reasons for finding Reinke not credible concerning the intensity, persistence and functionally limiting effects of her pain. First, the ALJ noted that Reinke's testimony was not corroborated by the medical evidence before her or the RFC assessment. (Tr. 45.) She observed that "the few medical reports that have been submitted show essentially unremarkable examinations and conservative treatment with advised weight loss, exercise, and over-the-counter medications." (Tr. 46.) Absent from the medical record are the complaints of persistent and severe disabling pain Reinke testified to at the hearing and the escalating level of treatment one would expect from medical professionals to ease such severe and chronic pain and provide some functionality.

It is true that one of Reinke's physicians, Dr. Jaremko, limited Reinke to less than sedentary work, but the ALJ explained that she rejected his opinion "because it was entirely unsupported by any clinical findings." (Tr. 47.) In particular, the ALJ noted Dr. Jaremko made no clinical findings that would support his limited RFC assessment. (Tr. 46–47.) In fact, his report indicates Reinke saw him because she needed disability forms signed, not because of a specific problem for which she sought treatment. (Tr. 187-88.) The medical record included a normal neurological

9

examination in February 2009. (Tr. 188.) Nevertheless, Dr. Jaremko completed the disability form showing significant functional limitations "per chart review and patient history." (Tr. 187.)

The same appears true of Dr. Iris Torres, who completed a form on February 28, 2007. (Tr. 189-90.) Although the form suggests significant limitations to Reinke's ability to stand or sit for more than fifteen minutes at a time, there are no findings in Dr. Torres' records that support such limitations. (Tr. 152-3.) In fact, the ALJ noted that "the physical examinations of the claimant by Dr. Torres were within normal limits despite the claimant's subjective complaints." (Tr. 44.) The ALJ also noted that Dr. Torres reported Reinke had a bruise in the area of her right clavicle which she attributed to taking her daughter sledding, hardly an activity consistent with the severe limitations she claimed. (Tr. 44.) Finally, the ALJ observed that according to Dr. Torres, Reinke was only taking over-the-counter medications such as Aleve, Tylenol, and Excedrin. Reinke also asked Dr. Torres at that time "if it was OK for her to get pregnant with her back condition." (Tr. 153.) The ALJ commented that Dr. Torres did not recommend against getting pregnant although she warned that it could aggravate her back pain, and advised her to stop taking Excedrin and Ibuprofen if she did get pregnant. (Tr. 44, 153.) Despite her alleged debilitating back pain, Reinke did get pregnant, and at the time of the hearing in 2010, had a two-year old child. (Tr. 47.)

The ALJ addressed other inconsistencies between the medical record and Reinke's description of her condition as well. For instance, she noted Plaintiff's doctors indicated the pain was controlled largely with over-the-counter medication. (Tr. 44.) *See* 20 C.F.R. § 404.1529(c)(3)(V) (treatment received is relevant to a credibility determination). She further noted the medical record had only one severe exacerbation of lower back pain, and that was in August 2005, well before the relevant date. (Tr. 159.) She also noted Plaintiff responded well to

10

a prescribed steroid burst. (Tr. 159.) *See* 20 C.F.R. § 404.1529(c)(3)(iv) (medications taken by a claimant are relevant to a credibility determination); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (ALJ noted claimant "did not take strong pain medication"). From these facts, the ALJ was therefore justified in concluding Plaintiff was not credible.

Reinke also testified she had been warned against surgery as it would render her wheelchair-bound. The ALJ found no discussion of this surgery in the medical record and therefore included this in her assessment of Reinke's credibility. As Reinke points out, degenerative disc disease is generally treated with conservative therapy and only results in an operation for 2% of its sufferers. (Pl. Br.13.) Furthermore, Plaintiff correctly notes that ALJs are not to play doctor or second-guess the type of treatment a plaintiff should have undergone. *See Clifford v. Astrue*, 227 F.3d 863, 870 (7th Cir. 2000) ("An ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record.") However, the ALJ's assessment of the lack of surgery in the medical record was not a suggestion that surgery was appropriate for Reinke's condition. Instead, the ALJ referenced the lack of discussion of surgery in the medical records simply as a reflection of the lack of substantiation of Reinke's own claims. In other words, the ALJ found the Reinke not credible because she could not find support in the medical record for what Reinke testified she had been told about surgery: namely, that she was not a surgical candidate because a neurosurgeon suggested she could end up in a wheelchair. (Tr. 24.)

Based on the foregoing, the Court concludes that the ALJ properly assessed Reinke's credibility and articulated the reasons for which she found her credibility lacking.

**Claim 2: The RFC Assessment Did Not Have A Sufficiently Articulate Analysis**

Secondly, Reinke alleges that the RFC assessment was flawed. The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling 96-8p. A "regular and continuing basis" means 8 hours a day, 5 days per week (or an equivalent work schedule.) The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis.

The ALJ found Plaintiff had severe impairments of obesity, lumbar pain, and migraine headaches. (Tr. 44.) Plaintiff has the burden of producing medical evidence that supports her claims of disability. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("In general, you have to prove to use that you are blind or disabled."). While Plaintiff has severe impairments, Plaintiff failed to meet her burden of proving disability in this case.

As noted above, most of the evidence in the record does not directly concern the relevant period starting after November 30, 2007. A treating physician's opinion is not accorded special weight where it is not based on sufficient objective evidence. 20 C.F.R § 404.1527(d)(2); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("The treating physician's opinion was 'not well supported by medical evidence.'") (citations omitted). In this case, the only relevant opinion in the appropriate time frame was an appointment with Dr. Jaremko, in which he based his opinion on one examination during which he reported no abnormal findings other than a weight of 205 pounds. (Tr.

188). Dr. Jaremko did not explain why someone who was not on a lot of strong pain medication was restricted to the extreme limitations he set forth. (*Id.*) Additionally, it is unclear whether Dr. Jaremko was even a "treating" physician. 20 C.F.R. § 404.1527(d)(2) (special weight given to treating physician relates to "detailed, longitudinal picture" of medical impairments). Dr. Jaremko only saw Plaintiff once.

Furthermore, an ALJ is not required to give significant weight to a physician's opinion based solely or primarily on a patient's subjective complaints. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("And medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."). Dr. Jaremko offered no reasoning in support of his opinion other than a reference to Plaintiff's "self-assessment" and MRI findings. (Tr. 185.) *See* 20 C.F.R. § 404.1527(d)(3) (the more medical evidence and explanation a medical source gives for her opinion, the more weight it is given). A reference to an MRI performed 15 years ago does not suffice. (Tr. 111.) A treating physician's opinion may be "unreliable if the doctor is sympathetic with the patient and thus 'too quickly find[s] disability.'" (citation omitted). *Ketelboeter*, 550 F.3d at 625. Consequently the ALJ did not err in discounting Dr. Jaremko's opinion.

Plaintiff also contends the ALJ erred in failing to discuss whether Plaintiff's obesity rendered her disabled. (Pl. Br. 20–21.) Dr. Zeller did encourage weight loss in 2006 but did not mention obesity as a reason for finding such extreme limitations. Neither did any of the other doctors who completed functional capacity assessments. Thus, the ALJ did not err in leaving it out and did not on the whole err in her RFC analysis, given the record.

13

**Claim 3: The ALJ Erred in Leaving Out Limitations in the Hypothetical Question Posed to the VE**

Finally, Reinke alleges the ALJ erred in leaving out limitations in the hypothetical question posed to the VE. Hypothetical questions posed to vocational experts ordinarily must include all limitations supported by medical evidence in the record. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). This does not mean every limitation alleged by the claimant must be included, only those limitations supported by the evidence. *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 2002). Indeed, the failure to present all of the claimant's impairments to a vocational expert would be "an error which in and of itself demonstrates a lack of substantial evidence supporting the ALJ's conclusion." *Wiggins v. Apfel*, 29 F. Supp. 2d 486, 494 (N.D. Ill. 1998).

The ALJ posed the following hypothetical question to the VE: assume a younger individual with high school education, no work experience, limited to sitting, standing, and walking, sitting six hours per eight hour day, standing/walking six hours per eight hour day, lifting, and carrying no more than ten pounds. (Tr. 30.) The VE testified there would be jobs such as telephone order clerk of food and beverage, which would be unskilled sedentary and charge account clerk for credit cards, new accounts, which would be unskilled and sedentary. (Tr. 30.) If the person was limited to less than two hours of sitting per day, but could stand for the remainder of the day, then such a person could perform a position like ticket taker, light, not requiring lifting of more than ten pounds. If the person would be limited to sitting less than two hours and standing less than two hours, then that would rule out all work. The ticket taker would allow for a sit/stand option that would also accommodate the limitations in the original hypothetical. (Tr. 31.) There would be a surveillance system monitor, unskilled, sedentary, which would allow for a sit/stand option at will. (Tr. 32.)

14

Plaintiff contends the ALJ should have provided Dr. Torres' limitations to the VE. Dr. Torres opined Plaintiff could stand/walk less than two hours in an eight hour workday, sit less than two hours in an eight hour workday, needed to lie down at unpredictable intervals six or more times a work shift, and would be absent from work more than three times per month. (Tr. 189–91.) Plaintiff contends the ALJ did not present these limitations to the VE and that this omission was in error. (ECF No. 15 at 23.) Plaintiff further notes that the VE did testify an individual limited to sitting less than two hours and standing less than two hours would be ruled out of all work. (Tr. 31; ECF No. 15 at 24.)

But as Defendant's brief highlights, Dr. Torres issued her opinion prior to the relevant period in the case. (Tr. 189–191; *see also* Def. Br. 22.) Furthermore, an ALJ must set forth the claimant's impairments "to the extent they are *supported by the medical evidence* in the record." (emphasis addded). *Herron v. Shalala*, 19 F.3d 329. 337 (7th Cir. 1994). As discussed above in the previous section, the ALJ included in the RFC those limitations she thought were adequately supported; she was not required to include unsubstantiated suggestions. Thus, the ALJ did not err at this step.

## III. Conclusion

Substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled within the meaning of the Act as of the date of the hearing. The ALJ did not err in her credibility assessment, her RFC analysis, nor her hypothetical question. For all of these reasons the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED** this   18th   day of January, 2012.

   s/ William C. Griesbach
   William C. Griesbach
   United States District Judge